MILDRED Z. ELLIOTT AND STEPHEN J. ELLIOTT, PLAIN-TIFFS, v. EVELYN K. SIMON AND THE NORTHEAST CORPORATION, DEFENDANTS.

Superior Court of New Jersey
Law Division

Decided February 11, 1977.

*Mr. Samuel R. Williamson, Esq.,* attorney for plaintiffs.

*Messrs. Dwyer, Connell & Lisbona,* attorneys for defendants.

THOMAS, J. S. C. Defendant, by this motion for summary judgment, seeks dismissal of plaintiff's complaint on the ground that plaintiff has failed to meet the $200 medical "threshold" requirement contained in *N. J. S. A.* 39:6A-8 of the New Jersey Automobile Reparation Reform Act (No Fault). *N. J. S. A.* 39:6A-8 provides that an owner or operator of an automobile is exempt from tort liability for bodily injury

if the bodily injury, is confined solely to the soft tissue of the body and the medical expenses incurred or to be incurred by such injured person or the equivalent value thereof for the reasonable and necessary treatment of such bodily injury, is less than $200.00, exclusive of hospital expenses, X-rays and other diagnostic medical expenses.

The undisputed facts reveal that plaintiff sustained injuries on July 9, 1974 when the automobile in which she rode as a passenger was involved in an accident with defendant's vehicle. Plaintiff's answers to interrogatories indicate that, as a result of the accident, she sustained soft tissue injuries and incurred the following medical expenses: Physiotherapy, $163; X-rays, $85; traction device, $11.95, and bill of Dr. N. Sacharow, $75.

There is no dispute as to either the physiotherapy or X-ray expenses. The former is included in computing the $200 medical threshold, while the latter is explicitly excluded. Since the traction device expense, even if added to the cost of physiotherapy, would not raise the total expenditure above the statutory minimum, the outcome of this motion hinges upon the bill submitted by Dr. Sacharow.

Were the medical services he rendered "treatment" and thus eligible toward computing the $200 medical threshold, or were they "diagnostic medical expenses" and thus excluded from that computation?

The report of Dr. Sacharow, an orthopedic surgeon, was annexed to defendant's moving papers. It reveals that the doctor saw plaintiff once, an examination conducted on October 19, 1976, more than two years after the accident. At the time of the examination plaintiff was complaining of pain in her left shoulder, neck, left arm and lower back. Following his examination Dr. Sacharow rendered a diagnosis but took no steps to ameliorate any of plaintiff's maladies.

In *Harris v. Osorio*, 125 *N. J. Super.* 463 (Law Div. 1973), supplemented 125 *N. J. Super.* 468 (Law Div. 1973), the court was faced with a similar question. The issue there was whether the cost of an examination conducted by a neurosurgeon would be included for the purpose of reaching

the $200 threshold. The examination, which proved nega-
tive, was requested by plaintiff's treating physician and con-
ducted while plaintiff was in the hospital undergoing treat-
ment. The court held that the cost of the neurological
examination should be included in computing the $200
threshold, stating that

* * * where diagnostic procedures are inseparably interwined [sic]
with an overall scheme of treatment, the costs of such procedures are
to be considered as "medical expenses" not excluded by the phrase
"diagnostic medical expenses" from computation toward the $200
threshold. [at 467]

This court does not reach the same conclusion. To do so
would frustrate the basic reasons for this No Fault legisla-
tion — prompt payment of claims, reduction in the cost of
insurance and relief for crowded court calendars. See Com-
mission recommendations, "Reparation Reform for New
Jersey Motorists," Report to the Governor and the Legisla-
ture (December 1971), at xii and xiv.

See also, *Emma v. Romano,* 136 *N. J. Super.* 255 (Law
Div. 1975), wherein Judge Bilder stated:

In construing this act it is important to recognize what the Legis-
lature has sought to accomplish. What the Legislature sought was
to segregate out of our legal system negligence claims for pain and
suffering arising from soft tissue injuries, the nature and extent of
which were such as not to require at least $200 *in treatment* and
thus were, in the Legislature's view, not sufficiently severe to war-
rant legal redress. This intention of the Legislature should be given
effect. [at 258–259; emphasis in original]

Reference to *Iavicoli, No Fault and Comparative Negli-
gence in New Jersey* 129, is also helpful.

Diagnostic medical expenses are normally those expenses associated
with attempting to ascertain the type, condition. or extent of the in-
dividual's injury. For example, the costs for x-rays (which is spe-
cifically enumerated in the Act), electrocardiograms, electroencephalo-
grams, myelograms, arteriograms, etc. would be excluded from that
amount needed to satisfy the medical threshold.

The Legislature did not place any monetary limitation on the cost of x-rays or other diagnostic tools. They are vital to determine the type and extent of injury. The effect of the statute is to encourage their use. Diagnostic cost, however, does not necessarily bear any reasonable relationship to the severity of injury, and for that reason is excluded from threshold consideration.

In this case Dr. Sacharow's examination of the plaintiff was just that, an examination. It was designed to identify rather than to treat. Its cost, therefore, constituted a diagnostic medical expense which, in view of the plain wording of N. J. S. A. 39:6A–8 as well as the legislative intent underlying the entire No Fault scheme, must be excluded from the computation of the $200 medical expense threshold. Consequently, defendant is exempt from tort liability and his motion to dismiss the complaint is granted.